IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH DORROUGH,<br><br>    Plaintiff,<br><br>v.<br><br>DEAN FOODS COMPANY GROUP DISABILITY PLAN and CONTINENTAL CASUALTY COMPANY,<br><br>    Defendants.                / | No. C 03-4826 MJJ<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Before the Court are Defendant Dean Foods Company Group Disability Plan and Continental Casualty Company's (collectively, "Defendants") and Plaintiff Kenneth Dorrough's ("Plaintiff") cross-motions for summary judgment. These motions require the Court to determine whether Defendants' decision to deny Plaintiff disability pension benefits was arbitrary and capricious. For the following reasons, the Court **GRANTS** Defendants' motion and **DENIES** Plaintiff's motion.

## FACTUAL BACKGROUND[1]

Plaintiff was an Area Sales Manager for Rods' Food Products, a subsidiary of Dean Foods Company, from March 20, 1989, through June 22, 2001. Defendant Continental Casualty Company ("CNA") issued a group long-term disability policy to Dean Foods effective July 1, 1999. On

---

[1] The facts are taken from the Joint Statement of Facts filed by Defendants and the Administrative Record.

1  January 3, 2002, CNA first received Plaintiff's claim for disability benefits.  Plaintiff claimed that he
2  was totally disabled from his job as a salesman for Rods' Foods because his right knee was swollen,
3  painful, and unstable.
4       CNA promptly sent a letter to Plaintiff acknowledging his claim.  CNA then conducted a
5  claim investigation, requesting and receiving a Long Term Disability Employee's Statement, an
6  Attending Physician's Statement ("APS") from Plaintiff's doctor, a Physical Demands Analysis
7  regarding Plaintiff's job duties completed by his employer, and a Long Term Disability Employer's
8  Statement.  CNA also received an APS from Dr. David Suchard dated December 27, 2001, which
9  certified Plaintiff's disability based on a right knee injury.  Dr. Suchard first saw Plaintiff on June
10 18, 2001.  Plaintiff underwent a total knee arthroplasty.  On September 13, 2001, Dr. Suchard noted
11 as follows:

> post-operation recovery going well.  May possibly return to prior work - 10/2002.
> Also may require job retraining, depending on continued post-op recovery.

14 (Administrative Record ("AR") at 111.)  The restrictions placed on Plaintiff were "no kneeling,
15 bending, stooping.  Very limited weight bearing.  Stand maximum 1 hour at a time & sit frequently."
16 (AR at 53.)
17      In the Claim Analysis Record, a Registered Nurse for CNA wrote on January 10, 2002:

> LDW [last day worked] 6/22/01   Age 52 yrs
> W/C [worker's compensation]
> Dx [diagnosis] - Rt knee strain, ACL [anterior cruciate ligament] tear
> Surgery 9/13/01   Total knee arthroplasty
> MD ERTW [estimates return to work] 10/02
> [Acute Duration Criteria] allows - conservative therapy - 49 days - (ACL tear)
> ADC allows – arthroplasty – knee
> manual work - 84 days

23 (AR at 79).
24      On March 28, 2002, CNA Disability Specialist Victoria Madden wrote a letter to Plaintiff
25 informing him that he did not qualify for total disability benefits under the plan and provided
26 information for an ERISA appeal.  On March 29, 2002, Plaintiff sent a letter to CNA appealing the
27 decision and emphasizing that the majority of his time at work was spent standing making sales calls
28 and presentations.  Plaintiff included a letter from his treating surgeon dated March 13, 2002.  Ms.

1  Madden reconsidered the information provided, and by letter dated April 2, 2002, notified Plaintiff
2  that the additional information did not alter the adverse benefits determination.
3     Subsequently, appeal committee member Joyce Kelly reviewed the information in the claim
4  file and spoke to Plaintiff's supervisor and a human resources employee to discuss Plaintiff's job
5  duties and the reason for his termination.  Ms. Kelly concluded that Plaintiff did not qualify for
6  benefits under the policy, and notified him of this by mail on May 16, 2002.
7     Plaintiff thereafter filed the instant lawsuit for benefits under the Employee Retirement
8  Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, claiming that Defendants unlawfully
9  denied Plaintiff benefits.  In its order February 8, 2005, the Court held that the "abuse of discretion"
10 standard of review would be used in evaluating CNA's claim determination.

## LEGAL STANDARD

12    Ordinarily, summary judgment is appropriate if there is no genuine issue as to any material
13 fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56.  In ERISA
14 actions, however, where the plaintiff is challenging the plan administrator's denial of benefits and
15 the district has already determined that the abuse of discretion standard of review applies, "a motion
16 for summary judgment is merely the conduit to bring the legal question before the district court and
17 the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do
18 not apply." *Bendixen v. Standard Ins.* Co., 185 F.3d 939, 942 (9th Cir. 1999).  In such cases, the
19 district court must look to the plain language of the plan to determine whether the plan
20 administrator's interpretation was arbitrary and capricious. *See Canseco v. Constr. Laborers*
21 *Pension Trust for S. Cal.*, 93 F.3d 600, 606 (9th Cir. 1996).  The administrators are found to have
22 abused their discretion if they construed provisions of the plan in a way that clearly conflicts with
23 the plain language of the plan.  *See id*. (internal citations omitted).  Under the abuse of discretion
24 standard, the administrator's decision will be upheld as long as there is "substantial evidence to
25 support the decision," *i.e.*, "relevant evidence [that] reasonable minds might accept as adequate to
26 support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence."
27 *Snow v. Standard Ins. Co.*, 87 F.3d 327, 332 (9th Cir. 1996), *overruled on other grounds in Kearny*
28 *v. Standard Ins. Co,* 175 F.3d 1084 (9th Cir. 1999).

# ANALYSIS

Plaintiff argues that CNA abused its discretion when it denied Plaintiff's claim because, according to Plaintiff, CNA's decision was not supported by substantial evidence and CNA failed to fully and fairly review Plaintiff's claim. Defendants disagree. The Court examines Plaintiff's arguments separately.

## A. CNA's Decision Was Supported By Substantial Evidence

Plaintiff contends that CNA abused its discretion by denying Plaintiff's claim because the decision was not supported by substantial evidence. Specifically, Plaintiff argues that: (1) CNA should not have relied on a generalized guideline regarding the normal recovery time after arthroplasty; (2) CNA inaccurately determined the physical requirements of his job; and (3) CNA improperly determined that Plaintiff could perform his job duties despite his physical limitations. Defendants argue that the medical and vocational information in Plaintiff's file supported CNA's determination and that CNA did not abuse its discretion. The Court agrees with Defendants.

### 1. Average Recovery Period For Arthroplasty

Plaintiff argues that CNA improperly relied on internal recovery guidelines for the usual duration of disability following a total knee arthroplasty. Plaintiff contends that CNA should not have relied on this very generalized guideline because the determination was not sufficiently individualized. Defendants contends that the usual recovery duration was used only as a guideline by CNA to make its disability determination. The Court agrees with Defendants.

The recovery guidelines relied upon by the nurse were obtained from CNA's internal guidelines, entitled *Acute Duration Criteria,* referred to in the file as "ADC." Defendant contends that the nurse's notes were intended as brief summary of the nature of the claim, including a general indication of the typical post-arthroscopy recovery period, and were not intended as a determination of the claim.

The role of the reviewing court is not to determine the claimant's disability, but to look at the record to determine whether there was a reasonable basis for the administrator's conclusion that the claimant was not disabled. *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004). Using the ADC's usual recovery period as a guideline for assessing a claim was

1  a reasonable basis for CNA's conclusion that Plaintiff was not disabled.  Plaintiff's assertion that by
2  using the ADC guideline, CNA failed to make an individualized determination, is groundless.  CNA
3  did not mechanically deny Plaintiff's claim based on the usual recovery period, but took that into
4  consideration while expressly considering the reports from Dr. Suchard and Dr. Stradiotto as
5  mentioned in the denial letters of March 28, 2002, and May 16, 2002.  (AR at 60, 75.)   The ADC
6  guideline for recovery was not the only basis for CNA's denial of disability benefits, and it was
7  reasonable for CNA to consider the guideline in making its determination.

8  Plaintiff further argues that the average recovery period for knee replacement surgery is
9  irrelevant in his case because Plaintiff's surgery was not a success.  However, the letter from
10 Plaintiff's doctor did not state that the surgery was unsuccessful, it only indicated that Plaintiff
11 continued to suffer from pain and swelling after the surgery, and that he may not recover further.
12 This is not equivalent to the surgery being a failure, and therefore the Court finds that the usual
13 recovery time for knee replacement surgery was relevant to CNA's determination, and that CNA did
14 not abuse its discretion by considering the guideline in making its disability determination.

15 **2.      Plaintiff's Occupational Duties**

16 Plaintiff argues that CNA inaccurately determined that the physical requirements of
17 Plaintiff's occupation were minimal.  Defendants argue that Plaintiff's position was managerial in
18 nature, and that "people skills" were clearly the primary requirement for success on the job rather
19 than an ability to bend and lift.  Plaintiff contends that the physical demands of his job were more
20 significant than CNA acknowledged.  The Court agrees with Defendants.  Although it was clear that
21 Plaintiff's job had some physical demands, the Court finds that it was not an abuse of discretion for
22 CNA to conclude that Plaintiff could perform the substantial and material duties of his occupation
23 despite those physical limitations.

24 The decision of an ERISA plan administrator will be upheld "if it is based upon a reasonable
25 interpretation of the plan's terms and was made in good faith." *Estate of Shockley v. Alyeska*
26 *Pipeline Serv. Co.*, 130 F.3d 403, 405 (9th Cir. 1997) (internal quotations omitted).  Here, CNA
27 based its decision on an evaluation of Plaintiff's occupational responsibilities and physical
28 requirements.  The plain language of the plan leaves the determination of what the "substantial and

5

1  material duties" of Plaintiff's occupation are to the discretion of the plan administrator. Plaintiff
2  does not argue that CNA relied upon clearly erroneous findings of fact, nor do any such errors
3  appear from the record. The dispute here centers upon CNA's discretionary application of the plan
4  to the facts of Plaintiff's case.

5  Plaintiff says he could not stand for the long hours required at food shows and that this
6  means he could not perform the material and substantial duties of his occupation. Plaintiff concedes,
7  however, that he was required to work at food shows only three to four times a year, leaving months
8  at a time when Plaintiff was able to perform his job without a problem. In order for Plaintiff to be
9  disabled under the plan, Plaintiff had to be "continuously unable to perform the *Material and*
10 *Substantial Duties of [his] Regular Occupation*." (AR at 28) (citing the plan language) (emphasis in
11 original). That CNA found Plaintiff's inability to perform one of his job functions three or four
12 times a year did not satisfy this policy requirement was not an abuse of discretion. Thus, the Court
13 finds that CNA's interpretation of the plan terms was reasonable, CNA did not abuse its discretion,
14 and its decision must be upheld.

### 3. The Medical Evidence

16 Plaintiff argues that based upon Dr. Suchard's assessment of his functional limitations,
17 CNA's determination that Plaintiff's restrictions were within the requirements of his job was not
18 supported by substantial evidence. Defendant argues that the medical and vocational information in
19 Plaintiff's file supported CNA's determination, and that CNA properly discounted Dr. Stradiotto's
20 letter dated March 13, 2002, regarding Plaintiff's ability to spend time on his feet because it was
21 facially inconsistent.

22 "[A] treating physician's opinion gets no special weight and can be rejected on the basis of
23 reliable evidence with no discrete burden of explanation." *Jordan v. Northrop Grumman Corp.*
24 *Welfare Benefit Plan*, 370 F.3d 869, 879 (9th Cir. 2004). It was within CNA's discretion to
25 determine that Plaintiff's physical restrictions were within the requirements of his job. CNA did not
26 discount the physical restrictions found by Dr. Suchard, but instead considered Suchard's findings in
27 its analysis. On December 27, 2001, Dr. Suchard advised that Plaintiff should not engage in
28 kneeling, bending, or stooping, that Plaintiff could do very limited weight-bearing, and that Plaintiff

could stand a maximum of one hour at a time. By January 28, 2002, four months after his knee surgery, Plaintiff indicated that he was able to walk with a cane, which he used because of the instability of his right knee, and that he could drive for short distances without pain.

A review of the record shows there was substantial evidence to support CNA's finding that Plaintiff's functional limitations did not prevent him from performing the material and substantial duties of his job. The Physical Demands Analysis ("PDA") submitted by Plaintiff's employer notes that the job required no more than two hours standing or walking at one time. (AR at 12.) There is no evidence in the record that Plaintiff's occupation could not be modified to require only one hour of standing at one time. The PDA also shows that Plaintiff's job did not require any climbing, stooping, kneeling, or crouching. Defendants point to Plaintiff's job description outlining Plaintiff's duties. Only one - working food shows as directed by the regional manager - appears to involve any significant physical labor. In addition, Defendant argues that Plaintiff always walked with a limp, long before his knee injury, suggesting that his occupation and duties never required a steady gait. It was within CNA's discretion to determine that Plaintiff could perform the substantial and material duties of his job within the physical restrictions set forth by Dr. Suchard. Thus, the Court finds that CNA's determination was based upon substantial evidence, and was not an abuse of discretion.

**B.   CNA Fully and Fairly Reviewed Plaintiff's Claim**

Plaintiff argues that CNA failed to fully and fairly review Plaintiff's claim because CNA did not consult with any health care professional to help it determine the seriousness of Plaintiff's knee condition. Defendant contends that there was no medical dispute at issue in the determination of Plaintiff's claim, and that therefore, CNA was not required to consult with a health care professional.

Plaintiff contends that the requirements set forth in the regulations governing ERISA claims required CNA to consult with a health care professional.[2] With regard to administrative appeals, a plan does not provide reasonable opportunity for full and fair review of an adverse benefit determination unless the claim procedures:

> provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment . . . the

---

[2] These requirements are made specifically applicable to disability claims by 29 C.F.R. § 2560.503-1(h)(4).

> appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

29 C.F.R. § 2560.503-1(h)(3)(iii). The regulations further require that the health care professional be someone other than the individual consulted in connection with the adverse benefit determination that is the subject of the appeal, and that he or she not be the subordinate of any such individual. 29 C.F.R. § 2560.503-1(h)(3)(iv).

Here, both the nurse who provided the ADC recovery guidelines and a second nurse reviewed Plaintiff's file prior to the appellate review. There is no evidence in the record that CNA employed a different health care professional to review Plaintiff's claim on appeal. However, as explained above, review by a medical professional is not necessary unless the benefit determination is based in whole or in part on a medical judgment. 29 C.F.R. § 2560.503-1(h)(3)(iii). The CNA's denial determination was based on vocational limitations. CNA never disputed Plaintiff's physical limitations as found by Dr. Suchard, and CNA did not make any medical determination regarding Plaintiff's condition. CNA only determined that, based upon the physical demands of Plaintiff's job, and in light of Dr. Stradiotto's statement that Plaintiff could continue working with an unstable knee, as well as the guideline for the maximum normal recovery time of eighty-four days, Plaintiff could still perform the substantial and material duties of his occupation as a Sales Manager. This was a determination of the physical requirements of Plaintiff's job, not a medical determination. Therefore, the Court finds that it was not an abuse of discretion for CNA not to have consulted a separate health care professional to review Plaintiff's case and that CNA fully and fairly reviewed Plaintiff's claim.[3]

///
///
///
///

---

[3] Plaintiff contends that CNA's refusal to consider the Social Security Administration's and the Workers Compensation insurer's favorable decisions on Plaintiff's disability applications demonstrates that CNA did not provide a full and fair review. Plaintiff's argument lacks merit. *See Madden v. ITT LTD Plan*, 914 F.2d 1279, 1286 (9th Cir. 1990) (finding denial of ERISA benefits was not arbitrary or capricious and was supported by substantial evidence despite a Social Security disability award).

8

**CONCLUSION**

For the foregoing reasons, the Court finds that Defendant CNA did not abuse its discretion in denying Plaintiff's claim for disability benefits. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: August 30, 2005

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE